Warren WRIGHT, Jr., et al., Appellants,

v.

Lucille Parker Wright MARKEY et al., Appellees.

Court of Appeals of Kentucky.

June 3, 1955.

Oldham Clarke, McElwain, Dinning, Clarke & Winstead, Robert T. Burke, Jr., Louisville, for appellant.

Arthur W. Grafton, Louisville, Clinton M. Harbison, Harbison, Kessinger, Lisle & Bush, Lexington, Harry D. Orr, Jr., Chicago, Ill., for appellee.

MONTGOMERY, Judge.

This appeal is from a declaratory judgment construing the will of Warren Wright, Sr., as it relates to the operation of Calumet Farm in Fayette County, Kentucky. The action was brought by Lucille Parker Wright Markey, widow of Warren Wright, Sr., against Warren Wright, Jr., his wife, his children, the trustees of the estate, and various contingent beneficiaries. The widow and son were two of the trustees. The appeal is prosecuted by the son, his wife and children in their individual capacities.

The judgment dealt with the unusual and novel questions concerning the administration of a trust created by the will of the testator, particularly so much of the will as was contained in the clause designated "Eighth (f)". The interest of the beneficiaries and the rights and duties of the trustees with respect to the trust accounting and management of the operation of Calumet Farm were involved. The general issues presented for determination were how the proceeds of the operation of Calumet Farm, and specifically the young from the breeding establishment and the earnings from the racing stable, were to be allocated between income and principal of the trust estate, how the corpus of the estate as it existed at the time of testator's death was to be maintained, and whether or not the trustees were required or authorized to set aside out of current income a depreciation or amortization fund to represent the using up of the gainful or productive life of the thoroughbred horses which were on hand at the date of the testator's death.

By paragraphs 5 to 8, inclusive, the judgment set forth the rules by which the trustees were to separate and distinguish between corpus and income, directed that no depreciation or amortization fund should be withheld by the trustees, and that the trustees proceed as directed by the widow and be relieved from any liability for any shrinkage or loss resulting from such operation.

The question on appeal concerns the correctness of the entire judgment but is focused on so much thereof as is contained in paragraph 8 holding that the widow may "reduce the size of the racing stable or the breeding establishment, or of both * * *" The appellants contend that the life tenant, the widow, has no right to reduce either below the size in which they had previously been maintained unless there is a proportionate reduction in both, or unless it is determined to abandon both of the establishments entirely. It is their complaint that the judgment does not protect appellants against unfair loss arising from management by the widow so as to enrich herself at the expense of the remaindermen.

Warren Wright, Sr., died on December 28, 1950, the owner of Calumet Farm located near Lexington, Kentucky. The farm was left as part of the residuary estate under the provisions of Section 8(f) of his will. During his lifetime, various farming opera-

tions were carried on which were for the most part accessory to the maintenance of the breeding establishment· and racing stable. These included a dairy, chicken raising, and the cultivation of tobacco, hay, and grain.

During his lifetime, the breeding establishment, with some yearly variation, normally consisted of about six stallions, sixty brood mares, and forty foals. All of these were maintained on the farm. During this period, there were approximately fifty horses, from two-year-olds and up, assigned to the racing stable. These horses were actually in training and were located from time to time at the various race tracks throughout the country.

The testator, with the assistance of his trainers, selected during the course of the year twenty-five of the forty foals produced for assignment to the racing stable. The remaining foals would normally be disposed of either at the annual yearling sales, or more frequently by private negotiation. Usually, about twenty-five horses would depart from the racing stable in the average year. Some of the mares would be assigned to the breeding establishment; some of the stallions might be assigned to the stud; others of the racing stable would become too old for further competitive racing, or would become ill, disabled, or unsuitable for the type of racing stable desired to be maintained. The size of the breeding establishment and the racing stable was maintained at a fairly constant level in this manner, supplemented by occasional outside purchases.

The principal income from ·the whole operation of Calumet Farm was derived from the racing stable. Some income was derived from stud fees· and from the yearling sales. The sole purpose of Warren Wright, Sr., in operating his own breeding establishment was to maintain his racing stable as one of the top stables of the country. The practice of keeping the racing stable on a fairly constant level by the use of the breeding establishment had been maintained by the trustees and by the widow since the death of the decedent. The widow had actively participated with her husband in the operation of the farm and in many decisions required in the operation of the breeding establishment and the racing stable.

Calumet Farm had been operated continuously in substantially the same manner for the eighteen years prior to the death of the decedent. During this time, the racing stable had become world famous, and in addition to winning many coveted trophies offered in the sport in this country, the stable had been financially profitable.

By the eighth clause of the will, the testator provided that the farm was to be held intact with the title held by the trustees. The duties of the widow, in part, were provided as follows:

"I direct that * * * my wife * * shall have the right * * * to direct and control the operation, maintenance and management of my said farm and any and all enterprises to which it is devoted, as well as all the live stock, produce, supplies and equipment thereon or pertaining thereto and the acquisition, sale or other disposition of any of the same and the employment, discharge and management of all personnel employed in the maintenance or operation of such farm or the conduct of any such enterprise, and to determine the enterprises to which such farm and the live stock and equipment are to be devoted, in whole or in part, whether consisting of the breeding and raising of horses or other activities looking to the production of gain or profit * *"

This clause also relieved the personal representatives and trustees of responsibility and liability by reason of the activities of the widow thereunder.

This clause of the will expressed the confidence of the testator in his widow's ability to carry on and conduct the operations of Calumet Farm in the manner and according to the standard set by him. The testator, undoubtedly, had in mind the experience and interest of his widow in the farm and the racing stable. He had made adequate

financial provision for her and appellants so that they would not be dependent upon the successful operation of the farm. The financial risk involved in such an operation is great and the testator must have realized that it was too hazardous for a trustee to assume. The possibilities of fire, epidemic, and change of economic conditions, as well as the well known and recognized lack of luck at the track, are only a few of the perils and imponderables he may have contemplated.

The lower court recognized the confidence so imposed by the will in construing the duties of the widow in paragraph 8 of the judgment as follows:

"It is the duty of the plaintiff, Lucille Parker Wright Markey * * * to determine the enterprises to which Calumet Farm and the livestock thereof shall be devoted so long as the objective is to produce a gain or profit * * * she may determine to reduce the size of the racing stable or of the breeding establishment, or of both, or she may properly determine to cease either racing or breeding, or both. Subject to the foregoing, it is her duty to conduct the operations of the farm in substantially the same manner as the same was conducted by the testator, Warren Wright, during his lifetime, and to exercise the discretion vested in her by the will in such a manner as in her best judgment will result in the preservation and perpetuation of the breeding establishment and the racing stable as near as may be to the standards established by the testator during his lifetime. To accomplish such purpose, it is her duty to select from the horses produced by the breeding establishment those which in her judgment are best calculated to maintain the standards of the racing stable and to devote such horses to racing and to become a part of the corpus as hereinabove set forth. The number of new horses so produced by the breeding establishment and in each year devoted to racing shall be substantially the number devoted to such purpose annually by the testator during his lifetime except that if the size of the racing establishment is reduced as herein authorized, the number of new horses thereafter required to be devoted to the racing establishment may be proportionately reduced * * *"

A reading of the pertinent part of clause 8(f) of the will shows that the testator left the decisions as to the size of the breeding establishment or racing stable, as well as their continued operation, to the discretion of the widow. The judgment above quoted so held correctly.

Appellants urge that the judgment is in error in declaring "racing and breeding establishments comprising in part the asset Calumet Farm are not wasting assets." It is argued that the useful life of horses in a racing stable is relatively short and brood mares and stallions but little longer.

A wasting property is personal property consumed in the using, or worn out by use; its value being necessarily depreciated or destroyed within a short time. Scott on Trusts, Volume 2, Section 239, Page 1332, Bogert's Trusts and Trustees, Volume 4, Part 1, Section 828, Page 291. Such property includes leasehold interests, royalties, interests in mines, oil and gas wells, quarries, timberlands, livestock, machinery and farm implements. The rule governing wasting or unproductive property is not applicable to the breeding establishment and racing stable of Calumet Farm because of the expressed intention of the testator that the farm should be operated as a unit and thus would be self-replenishing and reproductive rather than wasting. It was his purpose that the breeding establishment should be carried on in such manner as to supply sufficient foals for the racing stable. Without the breeding establishment, there would be merit in considering the racing stable as wasting property, but so long as the breeding establishment is conducted as directed, it replenishes the racing stable. The productive and replenishing features of the operation of Calumet Farm pursuant to the expressed

desire of the testator remove the breeding and racing horses, when considered as a unit or a going concern, from the class of wasting property.

In view of the broad language of the will, the judgment is correct and is affirmed.